UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL MOHAMMED SALAMI,

    Plaintiff,                      No. 19-11558

v.                                    District Judge George Caram Steeh
                                    Magistrate Judge R. Steven Whalen

TRUMBLEY, ET AL.,

    Defendants.

                              /

**REPORT AND RECOMMENDATION**

On May 28, 2019, Plaintiff Michael Mohammed Salami, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), filed a *pro se* civil complaint under 42 U.S.C. § 1983 [ECF No. 1]. On October 28, 2019, she filed an amended complaint [ECF No. 33]. Before the Court is Defendant Brian Trombley's Motion for Summary Judgment [ECF No. 52], which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). Because I find that Plaintiff has properly exhausted his claims through the MDOC's grievance process, I recommend that the motion be DENIED.

**I.    FACTS**

In his amended complaint, Plaintiff alleges that she is a "homosexual prisoner who is medically-detaled as having gender-dysphoria," and that she identifies as female. ECF

No. 33, PageID.198.[1] She states that on March 18, 2019, Defendant Trombley ordered her to "pack her shit" beause she was being moved to another unit. *Id*. PageID.198. However, Plaintiff alleges that she was denied entrance into her new cell by the other prisoner who was there, who loudly announced, "Get this fag our [of] here or Ima slap him." *Id*. PageID.199. Plaintiff states that Trombley heard this and laughed. Plaintiff asked Trumbley to move him to another cell, but Trumbley stated, "I'm giving you a direct order to lock down [here] or I'll take you to segregation." *Id*. Plaintiff alleges that she went back to the cell, but was again denied entry by the other prisoner. She told Trombley that she believed the other prisoner would not let her in because she was gay, and that the other prisoner would hurt her if she went back. *Id*. Plaintiff alleges that although she asked for protection several times, Trombley again told her that he was giving her a direct order. Plaintiff entered the cell, and Trombley shut the door. *Id*. Plaintiff states that the cell-mate pushed her against the wall and spat in her face; a fight ensued during which Plaintiff's thumb was injured and a tooth was chipped. *Id*. Plaintiff pushed the "panic button" in the cell, and Trombley told her not to do so or he would issue her a ticket. *Id*. In ¶ 14 of the amended complaint, Plaintiff states:

> "Trumbley denied [Plaintiff] protection or cell change due to her being gay; transgender and placed her knowingly in harms way which injured her and orderd a 'hit' on her and knew putting an openly gay transgender in cell w/ known gang leader w/ tatoos is very lethal. These acts constitute a Cruel and Unusual punishment claim and a Fourteenth Amendment Denial of

---

[1] Accordingly, I refer to Plaintiff with the feminine pronouns "she" and "her."

Equal Protection claim." *Id*.

Appended to Defendant Trombley's motion is Grievance No. SRF 2019-03-0293-28B, which Plaintiff filed and appealed through Step III of the MDOC grievance process. ECF No. 52-3, PageID.273-275. The Step I grievance form, filed on March 19, 2019 names Defendant Trombley, stating that Trombley "continued to give me a[n] direct order to go back into a[n] known hostile room that could endanger me, or disrupt the security of the facility." Plaintiff further wrote that Trombley "abused his power to enforce a[n] direct order in which he knowingly knew a[n] safety risk involved and then deliberately disregarded the risk on 3/18/19 he moved me into a[n] room w/ an inmate who didn't like gays, I then went downstairs to tell c/o Trumbley I can't lock w/ him for safety reasons." In the Step I form, Plaintiff also alleges Eighth and Fourteenth Amendment violations. *Id*., PageID.275. Plaintiff also complained that Trombley violated an MDOC Policy Directive. *Id*.

The Step I grievance denial cited M.D.O.C. Policy Directive 05.01.130, and stated, "This grievance is rejected at step I for vagueness." *Id*.

In his Step II appeal, Plaintiff stated that Trombley "knowingly gave me (2) direct orders which place me in harms way," and that Trombley "put me in a room knowingly w/ a[n] high ranking gang member knowing I am gay which is obvious as day a[n] safety ris to me and ignored the risks." *Id*., PageID.274. Plaintiff's Step III appeal was reviewed by the Grievance Section of the Office of Legal Affairs, which upheld the rejection,

stating, "This decision cannot be appealed within the Department." *Id*., PageID.273.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If the non-moving party cannot meet that burden, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322-23.

Under the Prison Litigation Reform Act (PLRA) of 1996, specifically 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under § 1983...by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies *as are available* are exhausted." (Emphasis added). The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, "exhaustion" under the PLRA means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 92 (2006). In *Woodford*, the Supreme Court defined "proper exhaustion" as requiring "compliance with an agency's deadlines and other critical procedural rules...." *Id.*, 548 U.S. at 90. Thus, whether a claim is "properly exhausted" under the PLRA requires an examination

of the particular institution's administrative rules and regulations regarding prisoner grievances.

However, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Under *Jones*, it is Defendant's burden to assert non-exhaustion as an affirmative defense. *Id*.; *Grinter v. Knight,* 532 F.3d 567 (6th Cir.2008)*. Jones v. Bock* overruled a long line of Sixth Circuit cases that placed the burden of pleading and supporting exhaustion on plaintiffs.

MDOC Policy Directive (PD) 03.02.130 provides prison inmates a detailed procedure for bringing forward complaints. This grievance procedure consists of four acts an inmate must undertake prior to seeking judicial review, each with specific time limits. First, within two business days after becoming aware of a grievable issue, the inmate must attempt to verbally resolve the dispute with those involved. If such an attempt is not possible, or if it is unsuccessful, the inmate must then file a Step I grievance form within five days. The prison staff is required to respond in writing within 15 days, unless an extension is granted by the grievant. If the inmate is not satisfied with the response, he must request a Step II appeal form and file it within ten days after receiving the Step I response.

If the inmate is dissatisfied with the result at Step II, he or she has ten business days to appeal to Step III. The Step III appeal is handled by the MDOC Director or his designee at the Prisoner Affairs Section, Office of Program Services, in Lansing,

Michigan. The Step III response concludes the standard administrative process.

### III.   DISCUSSION

Defendant argues that he is entitled to dismissal because Plaintiff did not properly exhaust his claims before filing suit. He suggests that Plaintiff's Grievance No. SRF-0293 did not precisely correspond to the allegations in her complaint. ("Notably, Salami's attempt to resolve the issue appears to be the same exchanges with Trombley which form the subject of her grievance, and she did not allege any threats by Trombley, any provocations by Trombley, or any fights with her cellmate as alleged in her complaint."). ECF No. 52, PageID.244.

The purpose of a grievance is to give prison officials fair notice of the conduct that underlies the Plaintiff's legal claim. *See Jones v. Bock*, 549 U.S. at 219 (" 'We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation'")(quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004); *see also Green v. Miller*, 2014 WL 1846063, at *4–5 (E.D. Mich. May 8, 2014) ("As the Sixth Circuit has explained, the exhaustion requirement does not require a prisoner's grievance to allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory. Rather, it is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or

statutory claim made against a defendant in a prisoner's complaint.") (Citing *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir.2003), abrogated in part on other grounds by *Jones*, 549 U.S. at 217.).

PD 03.02.130 § R requires an inmate to include "the *facts* involving the issue being grieved (i.e., who, what, when, where, why, how)." (Emphasis in original). Plaintiff did exactly that. She stated in her grievance that on March 18, 2019, she informed Trombley that she faced a risk of physical harm if she were to be moved into a cell with a violent gang member who was hostile to homosexuals, and she asked Trombley for protection. She said that Trombley knowingly disregarded that risk and failed to provide her protection. While Plaintiff was not required to specifically set forth the basis of a legal theory in her grievance, or "facts that correspond to all the required elements of a particular legal theory," *Green* at *5, the facts that she did put in her grievance were sufficient to give the prison authorities fair notice of Trombley's conduct.[2] A grievance does not have to precisely correspond to a civil complaint, but Trombley's alleged conduct in knowingly failing to act on the risk that Plaintiff would be assaulted is the gravamen of an Eighth Amendment "failure to protect" claim. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (prison official must both "know[ ] of and disregard[ ] an excessive risk to inmate health or safety.").

---

[2] I note that Plaintiff in fact did specifically mention an Eighth Amendment violation in his grievance, as well as an alleged violation of prison policy. Regardless, it is the *facts* that she set forth that satisfy the PLRA's "fair notice" requirement of exhaustion.

Plaintiff may or may not ultimately prevail on the merits of her claim, but she has sufficiently exhausted her federal claims. The Defendant's motion should be denied.

## IV.   CONCLUSION

I recommend that Defendant's Motion for Summary Judgment [ECF No. 52] be DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Date: September 4, 2020              s/R. Steven Whalen
                                     R. Steven Whalen
                                     United States Magistrate Judge

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on September 4, 2020 electronically and/or by U.S. mail.

                                     s/Carolyn M. Ciesla
                                     Case Manager